Filed 9/13/16  P. v. Liggons CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LONZO DUSHAN LIGGONS,<br><br>    Defendant and Appellant. | D068117<br><br><br><br>(Super. Ct. No. SCD261356) |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Affirmed in part, modified in part, and remanded with directions.

Lindsey Maria Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Lynne G. McGinnis and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Lonzo Dushan Liggons pleaded guilty to a charge of petty theft (Pen. Code,[1]

---

1    All statutory references are to the Penal Code.

§ 484) and two qualifying prior felonies. (§§ 459, 484, 666, subds. (a) & (b), 667, subd. (e)(2)(C)(iv).) In accordance with the plea agreement, the court granted him three years of probation under specified conditions, and ordered him to serve 365 days in local custody. Liggons contends certain probation conditions restricting his access to a camera or photographic equipment, the Internet, video games, and pornography are broad or vague under the federal Constitution. The People concede that one probation condition relating to Liggons's purchase and possession of a camera or photographic equipment must be stricken.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2015, Liggons took merchandise valued at less than $400 from a department store in San Diego. When he was arrested, he was under the influence of methamphetamine and carried in his backpack a glass pipe and a piece of aluminum foil containing .12 grams of heroin. Police learned at that time that there was a no-bail warrant for Liggons's arrest, his driver's license was suspended, he was subject to mandatory registration as a sex offender under section 290, and he was required to wear an ankle bracelet. He later told the probation officer he was homeless and unemployed.

The narrative portion of the probation report states that Liggons was assessed by the COMPAS [Correctional Offender Management Profiling for Alternative Sanctions] assessment tool. The probation report continues: "The assessed level of risk for recidivism suggests that [Liggons] is likely to have a better chance of success in the community if [he] is managed on formal probation with intensive monitoring and case planning to address identified needs." Moreover, the probation report stated that under

2

the COMPAS assessment, "[Liggons's] factors to be addressed as identified in the assessment are: to develop coping strategies for high risk situations, increase community involvement, and decrease and cease substance abuse."

The probation officer also reported on Liggons's criminal history: "From 1979 to 1981, [Liggons], as a juvenile, was true found on one felony and two misdemeanors, all for lewd and sexual assaults. He was placed on probation once and committed twice to California Youth Authority. From 1982 to 2014, as an adult, [Liggons] was convicted of twelve misdemeanors and sixteen felonies. He was placed in Drug Court, Court and Formal probation, and performed poorly. His probation was revoked on numerous occasions as a result of violations and new arrests. He was eventually committed to state prison six times and his performance on parole was unsatisfactory. He also violated his parole numerous times with new arrests resulting in him returning back to state prison to finish his term. Three of his arrests were also dismissed as a result of him pleading guilty on another matter."[2]

At the sentencing hearing, Liggons objected to probation conditions requiring him to: (1) obtain the probation officer's approval of his residence and employment; (2) not knowingly purchase or possess a camera or photographic equipment; (3) not knowingly

---

[2] Liggons's last conviction for a sex crime occurred in 2010 and involved a 17-year-old male whom he met on a public bus when the victim was going to school. Liggons asked him if he needed a job, and offered to get him one as an electrician apprentice. Liggons asked him for his telephone number, met him after school, gave him marijuana and offered him money in exchange for sex. Liggons orally copulated the minor, who said they later met on at least three other occasions and engaged in various sexual activities. Each time Liggons promised the minor money in exchange for sex, and Liggons and the minor used cocaine and marijuana together on different occasions.

possess or have in his home toys, video games or similar items that he knows, or is informed, attract children; (4) not knowingly possess any pornographic material, including files and disks, or knowingly be in places where he knows, or is informed, that pornographic equipment are the main items for sale; (5) not participate in computer chat rooms or otherwise knowingly contact minors, or persons he believes to be minors, via computer; and (6) not knowingly use or possess any computer or other electronic device, including a mobile phone, with Internet access without his probation officer's prior approval.

## DISCUSSION

### I. *Standard of Review*

In general, trial courts have broad discretion to impose terms of probation in order to foster the reformation and rehabilitation of the offender, while protecting public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; *People v. Urke* (2011) 197 Cal.App.4th 766, 774.) Thus, the imposition of a particular condition of probation is subject to review for abuse of that discretion. "As with any exercise of discretion, the court violates this standard when it imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances." (*People v. Jungers* (2005) 127 Cal.App.4th 698, 702.) However, constitutional challenges are reviewed under a different standard. Whether a term of probation is unconstitutionally vague or overbroad presents a question of law, which we review de novo. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183; *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

4

When an offender chooses probation, thereby avoiding incarceration, state law authorizes the sentencing court to impose conditions on such release that are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and . . . for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) Accordingly, the California Supreme Court has recognized that a sentencing court has "broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to [] section 1203.1." (*People v. Carbajal*, *supra*, 10 Cal.4th at p. 1120.)

Trial courts abuse that discretion by imposing a probation condition that is unreasonable because it: (1) has no relationship to the crime of which the defendant was convicted; (2) relates to conduct itself not criminal; and (3) requires or forbids conduct not reasonably related to future criminality. (*People v. Lent* (1970) 15 Cal.3d 481, 486 (*Lent*).) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*People v Olguin* (2008) 45 Cal.4th 375, 379-380.)

## II. *Residency and Employment Requirement*

Liggons contends the trial court abused its discretion by imposing probation condition No. 10(g) requiring him to obtain his probation officer's "approval as to residence and employment." He maintains the condition did not meet the *Lent* factors,

5

particularly because it was unrelated to his underlying crime of petty theft and he was homeless and unemployed when he committed that offense.

The appropriate inquiry is whether the condition that Liggons obtain the probation officer's approval as to residence and employment is reasonably related to his supervision. In *People v. Bauer* (1989) 211 Cal.App.3d 937 (*Bauer*), upon which Liggons relies, the court struck a residence-approval condition, which seemed designed to prevent the defendant from living with his parents because they were overprotective. Nothing in the record suggested that the defendant's home life contributed to the crimes of which he was convicted (false imprisonment and simple assault), or that his home life was reasonably related to future criminality. (*Bauer,* at p. 944.) The court concluded that the residence approval condition impinged on the right to travel and freedom of association, and it was extremely broad since it gave the probation officer the power to forbid the defendant from living with or near his parents. (*Ibid.*)

The present case is distinguishable from *Bauer, supra,* 211 Cal.App.3d 937. Although the probation condition here might not relate to the underlying crime, it relates to future criminality. When arrested, Liggons was under the influence of drugs and lacked permanent housing. The probation officer outlined Liggons's long criminal history, including for drug offenses and sex crimes, multiple probation and parole violations, and concluded he required intense monitoring. Under these circumstances, where Liggons lives may directly affect his rehabilitation and prevent future criminality. For example, without any limitations, he could choose to live in a residence where drugs are used or sold. Thus, we conclude the state's interest in Liggons's rehabilitation is

6

properly served by the residence-approval condition. Moreover, probation conditions "should be given 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin, supra,* 45 Cal.4th at p. 382.) We presume a probation officer will not withhold approval of a residence for an arbitrary or capricious reason. (*Id.* at p. 383.)

The employment condition at issue here enables the probation department to monitor other specific conditions of supervision imposed by the trial court. Further, in light of the reasonable inference that Liggons's unemployment and lack of money led to his crime of petty theft, the state has a reasonable interest in ensuring Liggons's employment is approved by his probation officer in order to prevent future criminality. (See *People v. Lewis* (1978) 77 Cal.App.3d 455, 464 [upholding probation order that precluded defendant from working in specified locations and required "that defendant maintain employment to be approved by the probation officer"].) We conclude the trial court did not abuse its discretion in imposing the probation condition requiring Liggons to obtain his probation officer's approval regarding his residence and employment.

### III. *Camera or Photographic Equipment*

The People concede and we agree that probation condition No. 10(n) prohibiting Liggons from "knowingly purchas[ing]/possess[ing] a camera or photographic equipment" is unreasonable under *Lent, supra,* 15 Cal.3d 481, because Liggons's underlying crime did not involve the use of a camera or photographic equipment, such is not criminal conduct, and the condition does not relate to preventing future criminality. This probation condition must be stricken.

7

## IV. *Videogames*

Liggons challenges probation condition No. 10(o) that he "not knowingly possess/have in [his] home toys, video games, or similar items that [he] know[s], or [his probation officer] or other law enforcement officer informs [him], attract children" as being vague because it fails to give him adequate notice of what type of behavior is expected of him in order to successfully complete probation.

The underpinning of a vagueness challenge is the due process concept of "fair warning." (*People v. Castenada* (2000) 23 Cal.4th 743, 751.) The rule of fair warning consists of "the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders." (*Ibid.*) The vagueness doctrine bars enforcement of " 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " (*People ex. rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115.) "[A]bstract legal commands must be applied in a specific *context*," and, although not admitting of " 'mathematical certainty,' " the language used must have " 'reasonable specificity.' " (*Id.* at pp. 1116-1117.)

We conclude that, as phrased, probation condition No. 10(o) prohibiting Liggons from possessing any "toys, video games, or similar items" is unconstitutionally vague. The condition does not adequately identify the items Liggons is prohibited from possessing. A certain item may be an indication of Liggons's intent to lure minors to his residence in one context but not in another. The language of the probation condition does not provide reasonable specificity as to the prohibited items in any given context. To

8

provide fair warning to Liggons of the items prohibited and to prevent arbitrary enforcement, we determine that the probation condition is invalid and order it stricken.

Liggons has proposed a modification of probation condition No. 10(o) that he maintains will avoid constitutional infirmity. A condition that is unconstitutionally overbroad or vague may sometimes be saved by modifying it. (*In re Sheena K.* (2007) 40 Cal.4th 875, 892 [approving the Court of Appeal's modification to cure a vague probation condition]; *People v. Forrest* (2015) 237 Cal.App.4th 1074, 1083-1085 [modifying a probation condition to cure overbreadth].) We remand the matter for the People to have an opportunity to address any proposed modifications of this probation condition, including to propose separate modifications.

## V. *Pornography*

Liggons contends probation condition No. 10(p) that he "not knowingly possess any pornographic material, including computer files and disks, or knowingly be in places where [he] know[s], or [his probation officer] or other law enforcement officer inform[s] [him], that pornographic materials are the main items for sale" is overbroad and infringes on his constitutional right to privacy. We disagree.

Some studies have concluded that there is a "causal link between pornography and sex crimes." (*Amatel v. Reno* (D.C. Cir.1998) 156 F.3d 192, 199-200 [discussing studies].) More narrowly, the United States Supreme Court has explicitly recognized a possible link between child pornography and pedophilia. (*Osborne v. Ohio* (1990) 495 U.S. 103, 111 & fn. 7.) Although there is also an "array of academic authority on the other side" (*Amatel,* at p. 200), our task is not to resolve this conflict, but to decide

9

whether the challenged probation condition is arbitrary, capricious or exceeds the bounds of reason. (*People v. Welch* (1993) 5 Cal.4th 228, 234.) We conclude that the evidence demonstrating a link between pornography and the commission of sex crimes, although not conclusive, places the pornography condition within the realm of reason. (See *Amatel,* at pp. 199-201 [upholding federal statute restricting distribution of pornography in prison and finding it was rationally related to rehabilitation and prevention of recidivism].)

Trial courts may impose conditions of probation that impinge on a defendant's constitutional rights if they are narrowly drawn and reasonably related to a compelling state interest in reformation and rehabilitation. (*People v. Bianco* (2001) 93 Cal.App.4th 748, 754-755; *People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058.) We conclude the pornography condition is reasonably related to the offense of which Liggons was previously convicted and for which he was still required to register as a sex offender, and it serves the interests of reformation and rehabilitation by removing Liggons from an influence that may be a contributing factor in the commission of sex offenses. The trial court therefore acted within its discretion in imposing this probation condition.

## VI. *Computer Chat Rooms*

Liggons challenges as overbroad and infringing on his constitutional rights to free speech, expression and information probation condition No. 10(q) stating, "Do not participate in computer chat rooms or otherwise knowingly contact minors, or persons you believe to be minors, via computer."

Although computer chat rooms did not play a role in the underlying offense here, the trial court cannot be expected to turn a blind eye to the fact that Liggons was already under a court order to register as a sex offender. In the context of Liggons's criminal history, the court reasonably could consider the high rate of recidivism among sexual offenders. "[T]he state has a compelling interest in the protection of children [that] justifies the restriction on [the defendant's] freedom of association." (*People v. Delvalle* (1994) 26 Cal.App.4th 869, 879.)

The prohibition against Liggons's participation in chat rooms is a precise restriction narrowly tailored to protect the public while maintaining Liggons's First Amendment rights. This probation condition serves as a targeted limitation on Internet use that permits legitimate uses of the Internet while preventing Liggons, a convicted sex offender, from using the Internet to continue a pattern of inappropriate behavior towards minors. There is no doubt that participation in computer chat rooms provides Liggons a venue for online, unregulated, anonymous communication that might induce him to commit other sex crimes. Thus this probation condition is a reasonable restriction on Liggons's ability to use computer chat rooms to hide behind the Internet's veil of anonymity.

## VII. *Internet Access*

Liggons challenges as overbroad probation condition No. 10(r) stating that he "not knowingly use or have in [his] possession any computer or other electronic device, including a mobile phone with Internet access" without his probation officer's prior approval. Liggons contends it violates his First Amendment constitutional rights because

11

it restricts his use of communication devices and the Internet without furthering a compelling government interest in criminal rehabilitation.

A court may "leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359.) This blanket ban on Internet access triggers First Amendment concerns. (See *In re Stevens* (2004) 119 Cal.App.4th 1228, 1236 ["The architecture of the Internet, as it is right now, is perhaps the most important model of free speech since the founding [of the Republic]. Two hundred years after the framers ratified the Constitution, the Net has taught us what the First Amendment means. . . . The model for speech that the framers embraced was the model of the Internet—distributed, noncentralized, fully free and diverse."].) Another court has stated: "Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer." (*Reno v. American Civil Liberties Union* (1997) 521 U.S. 844, 870.)

Possession and use of a computer are inextricably linked to access and use of the Internet. Probation condition No. 10(r) banning all computer possession and access to the Internet, including via cell phone, is a greater deprivation of Liggons's liberty than is reasonably necessary for his rehabilitation. The prohibition neither targets the compelling state interest in the protection of children, nor reflects the realities of Liggons's rehabilitation prospects. Considering the increasing importance of the

12

possession and use of the computer and cell phone with Internet access, and the availability of advanced technology to monitor computer and Internet use, a less restrictive condition could be fashioned to ensure that Liggons does not use the computer or cell phone improperly. The probation condition forbidding Liggons from possessing or using a computer or cell phone with Internet access unless approved by his parole officer is unconstitutionally overbroad and ordered stricken.

Liggons proposes a modification of probation condition No. 10(r) to address the trial court's legitimate supervisory concerns while also avoiding constitutional infirmity. On remand, the People will have an opportunity to address any proposed modifications of this probation condition, including to propose separate modifications.

## VIII. *Replacement Cost of Continuous Electronic Monitoring*

Although neither party raises the issue, there is a discrepancy between the court's oral pronouncement of probation conditions and the court's written order. During sentencing—at the probation officer's request—the court orally imposed condition 11(c), which states: "Reimburse the Probation Department [$2,500] to cover replacement costs in the event that the GPS equipment is not returned, is lost, stolen, or damaged in any manner." This change is not included in the court's final order. Under these circumstances, the oral pronouncement prevails. "As with other clerical errors, discrepancies between a [written order] and the actual judgment as orally pronounced are subject to correction at any time, and should be corrected by a reviewing court when detected on appeal." (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.)

13

DISPOSITION

The order granting formal probation is modified as follows: Probation condition No. 10(n) prohibiting Lonzo Dushan Liggons from knowingly purchasing or possessing a camera or photographic equipment is stricken. Probation condition No.11(c) is imposed, which states: "Reimburse the Probation Department [$2,500] to cover replacement costs in the event that the GPS equipment is not returned, is lost, stolen, or damaged in any manner." Probation condition Nos. 10(o) and 10(r) are ordered stricken, and the matter is remanded for further proceedings regarding their possible modification. In all other respects, the judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

14